ELLIS, Judge.
This is an expropriation case in which the State of Louisiana through the Department of Highways took a portion of a tract of land belonging to Ruth Gentry Talley, defendant herein. The order of expropriation was signed on January 11, 1965, the case was tried on its merits on October 23, 1967, and November 16, 1967. After trial on the merits, the court rendered judgment in which it found that the value of the land taken was $2700.00, that the severance damages suffered by the land amounted to $4400.00, and that the severance damages to the improvements on the property amounted to $5200.00, making a total of $12,300.00 for the property expropriated and the severance damages thereto. Credit was given in the judgment for amounts deposited in the registry of the court by the State. From that judgment, the State has taken a devolutive appeal. The defendant has answered the appealed judgment and has asked an increase in the award to $16,213.60. In her brief, however, defendant neither argues nor prays for an increase, asking only for af-firmance, so we assume the prayer of the answer has been abandoned. Gaines v. Crichton, 187 La. 345, 174 So. 666 (1937).
Prior to the taking, Miss Talley owned and resided on a piece of property in Bogalusa fronting 100 feet on the south side of Mississippi Street and having a depth of approximately 650 feet in a southerly direction from Mississippi Street, which ended at her east property line. On the east, Miss Talley was bounded by the property of the Bogalusa Country Club. In 1956, Miss Talley had constructed a one bedroom home to which, in 1960, she added a studio by enclosing a former car port, and a new car port. The residence contained 1740 square feet of floor space, and was of brick veneer construction. The materials and the workmanship incorporated therein were of exceptional quality. Miss Talley testified that she had expended in excess of $28,000.00 in the construction of the house and the addition. All of the *666 witnesses who examined the house testified that it was exceptionally well maintained.
The piece of property taken was roughly triangular in shape, the apex of the triangle situated on the easterly boundary of Miss Talley’s property, approximately 190 feet south of her northeast corner. At the rear, or southerly, end of Miss Talley’s property, the triangle had widened to such an extent that only 45 feet in width remained of her property. According to the Highway Department’s survey, the area taken totalled 16,185.5 square feet, leaving Miss Talley an area of 55,950 square feet in her lot. After the taking, Miss Talley’s house was approximately 12 feet from the westerly right of way line of Louisiana Highway 21, which at the point where it passes Miss Talley’s property, is a four lane concrete surface highway, intended as a by-pass for heavy traffic around the business section of Bogalusa.
Mississippi Street, in the general area in which Miss Talley lived, was an old, well settled and highly desirable residential section of Bogalusa. All of the appraisers who testified stated that there had been no sales of property in the immediate area sufficiently recent to serve as comparable sales.
In reaching their conclusion on the value of the property taken, both of the State’s experts relied on seven sales of property situated anywhere from eight blocks to 2/z of a mile from the subject property. These were located, for the most part, in well developed subdivisions on the outskirts of Bogalusa. The values which they ascertained in these areas on a square foot basis were adjusted upward because of the more desirable nature of the subject property. On the basis of these comparable sales, the appraisers reached a value of 200 per square foot for the front part of Miss Talley’s property, and 100 a square foot for the rear part, before the taking. Mr. Willet who first testified, awarded the 200 per square foot to a depth of 250 feet back from Mississippi Street. Mr. Breeding, the other expert, awarded the 200 for a depth of 300 feet from Mississippi Street. Mr. Willet felt that the value of the land taken was $1649.00, and Mr. Breeding gave it a value of $1718.00. Neither of the State’s experts were personally familiar with Bogalusa real estate.
Mr. Garrick and Mr. Stevenson who testified for Miss Talley were both local real estate agents. In neither case was their training in appraisal as impressive as that of the witnesses for the State. On the other hand, Mr. Garrick had been in the real estate business in Bogalusa for approximately 17 years, and Mr. Stevenson for three years. Neither of them felt that there were any comparable sales which they could use in determining the value of the subject property. Instead, they relied on their general knowledge of general real estate conditions in Bogalusa. Mr. Garrick felt that the value of the property as a whole was 16^0 a square foot. Mr. Stevenson felt that the property was worth $7000.00 an acre. On that basis, Mr. Garrick arrived at a value of $2700.00 for the part taken, and Mr. Stevenson at $2604.00. The trial judge selected Mr. Garrick’s testimony as the most reliable and awarded $2700.00 as the value of the property taken.
The State argues that the court committed manifest error in so doing. They question both the ability and credibility of the defense witnesses, and claim that since the State’s witnesses followed the comparable sales method which has been recognized by the courts of this State, the estimates of value placed on the property by the State’s experts should have been adopted by the trial court.
We recognize that the courts of Louisiana have said that comparative sales are the best evidence of market value. However, in this case, the trial court found that there were no reliable sales comparable to the subject property. In view of the desirable nature of the property taken, its unique situation prior to the taking, and *667 the distance between it and the comparable sales used by the State’s experts, we think his decision was correct. The opinions of defendant’s experts were based on their local knowledge and experience, and, under the foregoing circumstances, we cannot say that the trial judge was manifestly erroneous in adopting Mr. Garrick’s figure of $2700.00 as the fair market value of the property taken.
Mr. Garrick’s credibility is attacked by the State because his testimony the first time varied markedly from his subsequent testimony. His explanation that he was ill when he first testified was accepted by the trial court, and we find no error therein.
In arriving at severance damages, Mr. Willet figured the reproduction cost of the house as of the time of the taking at $11.00 a square foot, and with allowance for other improvements, put the reproduction cost of the house at $20,144.00. He depreciated the house 10%, leaving a value of $18,130.-00. He valued the entire property at $28,061.00. He found the depreciation in value of 5^ a square foot on the front 250 feet of the property, and a reduction in value of the improvements from $18,230.00 to $11,118.00. This gave him a total severance damage of $8,405.00 on the front 250 feet of the property. However, because he found that the rear 400 feet of the property now had highway frontage, he valued it at 15‡ a square foot instead of 10‡, giving a special benefit of $1504.00. He offset this against the $8405.00 decrease in value of the front portion, and arrived at net severance damages of $6901.00.
Mr. Breeding found that there was no damage to the front 300 feet of the property and a special benefit of 50 a square foot to the rear 350 feet of the property remaining after the taking. He depreciated the improvements from $17,550.00 to $11,-984.00, and arrived at a net severance damage of $5299.00 after giving credit for the enhancement in value of the rear 350 feet. Both Mr. Willet-and Mr. Breeding were of the opinion that the rear portion of the property could be used for one or two home sites.
Mr. Garrick felt that the rear portion of the property was of no use whatsoever because it was low and because of its triangular shape and felt that because of that fact the value of the entire tract remaining after the taking was diminished by $4400.-00. He valued the improvements on the property at $26,000.00, and felt that they had been damaged to the extent of 30%. His total severance damages were $12,200.-00. Because of the excellent condition of the property, he did not allow any depreciation on the improvements.
Mr. Stevenson valued the improvements on the property at $31,173.00, and was of the opinion that they were damaged to the extent of 1/3, or $10,391.00. He also felt that the remaining land after the taking was damaged to the extent of 20%, or a total of $1845.00. Mr. Stevenson was also of the opinion that the southerly end of the property, because of its irregular shape and because it was low, would not be suitable for construction of a home comparable to other homes in the general area.
The district judge accepted Mr. Garrick’s estimate of $4400.00 for the damage sustained by the remaining land. He also accepted Mr. Garrick’s figure of $26,000.00 as the value of the improvements, but fdlt that 20% damages would be more reasonable than the 30% proposed by Mr. Garrick. He therefore awarded severance damages to the improvements in the sum of $5200.00.
The State argues that the proper method of arriving at severance damages is the “before and after” method, in which the property before the taking is valued, and the value of the property after the taking is subtracted therefrom. After giving credit for the value of the property taken, the remainder would be the severance damages. They point out that neither the defendant’s witnesses nor the district judge followed this method. However, we can see no basic difference in the techniques *668 exercised by the various experts. All of them testified as to the effect of the taking of the land — the State’s witnesses expressing the decrease and the special benefits in terms of cents per square foot, and Mr. Stevenson in terms of percent value. Mr. Garrick testified that the remaining property was worth $4400.00 less after the taking than it was before. Damage to the improvements was expressed by the State’s witnesses in terms of a dollar decrease in value, and by defendant’s witnesses in terms of a percentage decrease, which they converted to dollars.
We do not feel that the means of arriving at the before and after values used by the experts in this case differ so markedly as to make one method superior to the other as a matter of law. They all followed the same pattern of reasoning, but they expressed their conclusions differently. The final determination must turn on the question of the credibility of the expert witnesses.
We do not think the trial judge erred in accepting Mr. Garrick’s figure of $4400.00 as the damage done to the land by the taking. Of the other experts, Mr. Wil-let felt the land benefited to the extent of $211.00 and Mr. Breeding fixed the special benefit at $267.00. Mr. Stevenson’s estimate of the damages suffered by the land was $1825.00. All of the experts, by one means or another, gave credit for the property taken in reaching their conclusion.
The State’s experts testified that special benefits accrued to the rear 350 to 400 feet of the property because that parcel had frontage on the new highway, whereas it. had no highway frontage before the taking. The defendant’s experts felt the rear part of the property had little value because it was lower than the front part, and because it was triangular in shape, with a maximum depth of about 100 feet, tapering down to a depth of 45 feet. For those reasons, and because the property was zoned A-l Residential, and because of required building set-back lines, they did not feel it to be suitable for a residence of the quality of the others in the neighborhood.
If special benefits are to be allowed, the burden of proof relative thereto is on the State. The trial judge obviously must have felt that it failed to carry the burden, since he did not accept the testimony of their experts on that point, and we cannot find him manifestly erroneous in so doing, or in accepting Mr. Garrick’s testimony as to the damages to the land. A simple mathematical computation, subtracting the value of the property taken and the damage to the remaining property from the value of the tract before, leaves an after value of $4900.00.
The judge’s award of $5200.00 as damages to the improvements is less than the estimate of damages thereto made by any of the experts. These ranged from a low of $5566.00 by Mr. Breeding to a high of $10,391.00 by Mr. Stevenson. We assume the State has no complaint on this score.
To summarize, the trial judge found a “before” value of $38,000.00, having accepted Mr. Garrick’s estimate of a $12,-000.00 value on the land and $26,000.00 on the improvements. He found an “after” value of $4900.00, Mr. Garrick’s estimate on the land, plus $20,800.00, his own conclusion as to the value of the improvements, or a total of $25,700.00. This leaves a balance of $12,300.00, which must be decreased by the value of the property taken, or $2700.00, leaving severance damages of $9600.00. The total award, for the taking, and severance damages, is $12,300.-00.
The judgment appealed from is, accordingly, affirmed, the State to pay such costs as may be required by law.
Affirmed.